## FREDERICK T. MOPPIN AND ANOTHER vs. THE ÆTNA AXLE AND SPRING COMPANY.

As a general rule no evidence should be admitted until the court can see that it is admissible. But where the admissibility depends upon the subsequent proof of connecting facts, and the party offering the evidence satisfies the court that he expects in the course of the trial to prove those facts, the court may in its discretion receive the evidence subject to objection, to be ruled out of the case if the connecting facts are not supplied.

Where goods purchased were to be paid for in gold coin or its equivalent in United States currency, it was held that it was not in any proper sense an alternative contract, to be declared on as such, but that the vendor might recover on a general court for goods sold, the provision as to payment in gold or its equivalent being merely a mode of fixing the price.

And the plaintiff can recover on such a contract the value in currency of the gold coin at the time it was due.

GENERAL ASSUMPSIT, to recover for a quantity of steel sold; brought to the Superior Court in Fairfield County, and tried to the jury on the general issue, with notice, before *Park, J.*

Upon the trial the plaintiffs introduced evidence tending to prove that in the month of December, 1868, the defendants applied to them to buy, as they should order it, two kinds of spring steel, one known in the market as Greaves & Sons', and the other as spur steel; that they agreed with the defendants that they would import for them, as they should order, the Greaves & Sons' steel at seven and a half cents per pound, and the spur steel at $128 per ton, on a credit of three months after delivery, payable in gold, or its equivalent in United States currency; and that subsequently in the same month the defendants gave them an order to import considerable quantities of Greaves & Sons' and of the spur steel for them, upon the above terms, and that the same were accordingly imported by the plaintiffs, who paid the duties thereon, and delivered to the defendants in the month of February following, in accordance with the terms of the agreement.

The defendants offered evidence tending to prove that the agreement made between the parties for the purchase and

sale of the steel was, that the plaintiffs should furnish them such steel, known as Greaves & Sons', as they should order, on a credit of four months from the time of its delivery, at the rate of seven and a half cents per pound, and that the steel should be superior to any other steel in the market; and that they should furnish them such spur steel as they should order, on a credit of three months from the time of its delivery, at $128 per ton, and that the spur steel should be superior to another kind of steel known as the Jenks steel, and should be rolled in the same manner as the Jenks steel; and that the defendants should pay for the steel in gold coin at the above rates when the term of credit expired. That the business of the defendants was the manufacturing of carriage springs for sale and that the steel so purchased was intended for that use, and that this was well known to the plaintiffs at the time of the making of the agreement. That on the 22d day of December, 1868, the defendants gave an order to the plaintiffs to import for them a quantity of Greaves & Sons' steel, and on the 23d of December, a like order to import a quantity of spur steel; and that both orders were given by the defendants and accepted by the plaintiffs under the agreement claimed by the defendants; and that the quantity of steel so ordered was delivered to the defendants in the month of February, 1869.

The defendants also offered evidence tending to prove that both Greaves and Sons' and the spur steel were of an inferior quality, a portion being too brittle and a portion too soft, without elasticity, and wholly unsuitable for carriage springs; and that many of the springs made therefrom by skilled workmen were worthless, and the labor expended in the making of the springs wholly lost; and that the spur steel was inferior to the steel known as the Jenks steel, and was not rolled in the same manner, and in consequence of not being so rolled required more labor in fitting the springs.

The plaintiffs offered evidence tending to prove that the term of credit for the Greaves & Sons' steel was the same as that for the spur steel, three months; that the Greaves & Sons' steel delivered to the defendants was in fact superior to any

other steel in the market, and that the spur steel was in fact superior to the steel known as the Jenks steel, and that the difference between the manner in which the Jenks and the spur steel were rolled was undistinguishable, and in fact had caused the defendants no loss ; and that all of the steel, both Greaves & Sons' and the spur steel, were of a superior quality, and would, and did, make, when manufactured with ordinary skill, the best spring produced, and that the defective and worthless springs manufactured by the defendants from the steel were so made not by any defect or inferiority in the steel but by the negligence and want of skill of the defendants' workmen.

The plaintiffs further offered evidence tending to prove that in the year 1868, all the other manufacturers of springs in Bridgeport, consisting of three different companies, and who manufactured very large quantities of the best springs made in the country, purchased and received of the plaintiffs large quantities of steel of the same brand and quality with the steel in question, and manufactured by the plaintiffs, about the same time that they manufactured the steel delivered to the defendants. To this evidence the defendants objected, on the ground that it did not conduce to show that the steel in controversy was good steel, suitable for carriage springs, and answering the warranty of the plaintiffs. The plaintiffs' counsel stated in good faith to the court that they intended, and should undertake, to prove that the steel in controversy was made from the same iron, obtained from the same ore, and underwent the same process as the steel purchased by these companies. The defendants still objected to the admission of the evidence offered, until such other evidence had been first introduced. The court decided that it would not, at that point, interfere with the order of the testimony as it was proposed to be offered by the plaintiffs, but would receive the evidence temporarily, subject to the objection of the defendants, until it should appear what proof the plaintiffs should offer with regard to the similarity of the steel in the two cases.

The plaintiffs did, subsequently, in good faith, undertake

to prove the fact that the iron used in the manufacture of the steel in question, and in that of the steel delivered to the other companies, was the same kind of iron, produced from the same ore, of the same mine, and subjected to the same process to produce the steel; but on objection of the defendants, the court rejected the testimony of the witness offered, as it appeared that he did not have, of his own knowledge, information of all the facts necessary to prove the claim. The court charged the jury that the plaintiffs had failed in their effort to show that the ore and iron from which the steel in controversy and the steel delivered to the other companies was made, was the same, and underwent the same treatment and process; and that therefore the question of the quality of the steel delivered to the other companies was not pertinent to the case, and that all the testimony that had been offered and temporarily admitted upon this subject should be wholly disregarded by them and laid out of consideration.

The defendants requested the court to charge the jury that if they should find that the steel in controversy was not such as the plaintiffs warranted it to be, and was inferior in quality, or different in form of the bars, it would be the duty of the jury to deduct from the purchase price so much as the steel was worth less to the defendants by reason of these defects for the uses for which the defendants purchased it. The court charged upon this point as requested, adding the following:—" always provided that the defendants were bound to make the damage to themselves as small as it reasonably could be under all the circumstances, after they had knowledge of the defects."

The defendants further requested the court to charge the jury that to the amount so to be deducted it would be their duty to add the expense of the labor of making such springs as proved to be worthless by reason of defects in the steel. The court charged upon this point as requested, adding the following:—" provided the defects were not discovered before the labor was expended."

The defendants further requested the court to charge the jury that if they should find that the agreement between the

parties was that the steel purchased should be paid for in gold coin, it would be their duty to render a verdict for the plaintiffs to recover of the defendants in gold coin in dollars and parts of dollars the purchase price of the steel, with lawful interest thereon from the time the several payments became due; and for so much of the plaintiffs' demand as by the agreement was to be paid in currency, the jury should render a verdict for the plaintiff to recover the same in lawful currency, with lawful interest thereon from the time the same became due. In answer to this request the court charged the jury as requested; and further charged them that if they should find that by the contract the defendants agreed to pay in coin or its equivalent, and that by the equivalent was intended currency, such an agreement would leave it optional with the defendants to pay in either gold coin or its equivalent in currency when the credit expired; that it was the duty of the defendants, when the term of credit had expired, to pay or tender payment to the plaintiffs in gold coin or its then equivalent in currency; that, the defendants having failed to tender either coin or currency, the plaintiffs were entitled to recover the then value of the gold in currency.

The defendants further requested the court to charge that if the jury should find from the evidence that the contract of sale was made in the alternative, that the defendants should pay for the steel in gold coin or in some other currency equivalent to gold coin, the plaintiffs could not recover for the steel in the present action. The court omitted so to charge.

No objection was made by the defendants to the admission of the testimony of the plaintiffs, showing what the agreement between the parties was, nor was any claim made that the contract was a contract in the alternative, and therefore variant from the contract alleged in the declaration, until the argument of the counsel for the defendants to the jury. The plaintiffs claimed that they were entitled in any event, upon the evidence offered by them, to recover on the count for an account stated.

The jury having returned a verdict for the plaintiffs, the defendants moved for a new trial for error in the rulings and charge of the court.

*Sturges*, in support of the motion.

1. The court should have rejected the evidence to which the defendants objected. Informing the jury in the charge that they should lay that evidence out of consideration did not cure the error. The opinions of the jury had perhaps been formed under its influence, before they were told to disregard it. When evidence erroneously admitted might have influenced the jury a new trial should be granted. *Weed* v. *Weed*, 7 Conn., 128; *Farnum* v. *Farnum*, 13 Gray, 508; *Erben* v. *Lorilard*, 19 N. York, 302; *Myers* v. *Malcolm*, 6 Hill, 292, and note *b* on page 296; *Penfield* v. *Carpender*, 13 Johns., 350. No evidence should be admitted till the court can see that it is admissible. No professions of good faith should be suffered to break in upon this rule. A juror who has formed an opinion upon a case before he takes his seat as a juror is thereby disqualified. If he is persuaded by irrelevant or incompetent testimony to form an opinion while sitting as a juror, is he not equally disqualified? Is not the danger greater that he will do injustice in the cause, when the objectional testimony is presented to him during the solemnity of a trial? In *State* v. *Taff*, 37 Conn., 392, the court were able to see from the other evidence in the cause that the illegal evidence could not have affected the verdict.

2. The court should have charged the jury in relation to the damages as requested by the defendants; and the charge which was given was erroneous.

3. The charge of the court in relation to the currency in which the plaintiffs should recover was erroneous.

4. The request of the defendants that the court should charge that if the jury should find the contract of sale to be as claimed by the plaintiffs, they could not recover in this action, should have been complied with. The action of general assumpsit is founded on the implied promise arising upon the performance of the special agreement by the plaintiffs. When the goods were delivered, or when the payments fell due, the law raised an implied promise to pay either in gold or other currency, as the defendants should elect, when the

payments fell due. The law implied that promise and no other, and that promise exhausted the consideration. The defendants elected to pay in gold, but if they did not, the promise already implied could not be changed by the omission of the defendants to perform it. There cannot be two co-existing promises to pay on one consideration. *Hopkins* v. *Logan*, 5 Mees. & Wels., 342; *Bailey* v. *Bussing*, 29 Conn., 1. Contracts which are silent as to the currency in which payments are to be made, are so construed that they may be performed by paying in paper currency. And pleadings which describe such contracts in the same general form, are construed as demanding a recovery in the same currency. The evidence therefore given by the plaintiffs of an alternative contract, disproved their declaration, which set forth an absolute contract, and for that reason they were not entitled to recover upon it. 1 Chitty Pl., 237; *Penny* v. *Porter*, 2 East, 2; *Tate* v. *Wellings*, 3 T. R., 531; *White* v. *Wilson*, 2 Bos. & Pul., 117; *Stone* v. *Knowlton*, 3 Wend., 374; *Davis* v. *Nichols*, 2 Chitty, 320. It was not necessary for the defendants to object to the testimony in order to avail themselves of the objection that the evidence did not support but disproved the declaration. *Hamilton* v. *N. York Central R. R. Co.*, 51 N. York, 100, 106. There was no evidence in the cause tending to prove an account stated. The disagreement between the parties as to the value of the steel and the amount to be paid, arose before the payments became due, and that disagreement continued to the trial.

*Seeley* and *Sumner*, with whom was *Beardsley*, contra.

FOSTER, J. The motion for a new trial in this case rests on the following grounds:

1. The admission of improper evidence.

2. The omission of the court to charge the jury as requested by the defendants on the question of damages, and for erroneous instruction given on that subject.

3. For like erroneous instruction in relation to the currency in which the plaintiffs might recover;—and

4. The refusal of the court to charge the jury that if they found the contract of sale to be as claimed by the plaintiffs, they could not recover.

Upon the first ground set forth in the motion, we think that, under the circumstances, the evidence complained of was admissible. We agree with the defendants' counsel that, as a general rule, no evidence should be admitted till the court can see that it is admissible. Where however the admissibility of evidence depends upon several facts, to some extent independent of each other, and where each fact must be proved to complete the chain of evidence, the exercise of a sound judicial discretion does not require the court, uniformly, to interfere in the order of the testimony. A beginning must be made somewhere ; and when, as in the present case, the court is satisfied that the party is acting in good faith, and intends fairly to supply each particular link till the chain of testimony is perfect, the evidence, as offered, may come in, subject to objection, to be stricken out and go for nothing if the necessary connecting portion be not supplied.

Acting upon this principle, the court below admitted the evidence complained of, subject to the exception ; and as the plaintiffs failed to connect it with the point in issue so as to make it legitimate evidence, which they had assumed in good faith to do, the court ruled and directed the jury, that the testimony thus temporarily admitted should be wholly disregarded by them, and laid entirely out of their consideration.

We discover nothing in this to lay the foundation for a new trial.

Upon the next ground of complaint, the omission of the court to charge the jury as requested on the subject of damages, and for erroneous instruction given on that subject, it is sufficient to say, that the instruction given was substantially what was asked. The qualifications of that instruction, and the additions made to it, seem to us reasonable and proper, and afford the defendants no cause of complaint.

The next exception taken is, in relation to the currency in which the jury were instructed that the plaintiffs might recover.

Moppin *v.* Ætna Axle & Spring Company.

On examining this part of the charge we perceive nothing objectionable; it is fully as favorable to the defendants as they could reasonably have asked.

The remaining ground of exception to the charge is, that the court omitted to comply with the defendants' request, to instruct the jury that if they should find the contract of sale to be as claimed by the plaintiffs, they could not recover.

The defendants, to sustain this claim, assume that the plaintiffs, by their testimony, proved an alternative contract, and that such proof did not support the declaration, which was on an absolute contract.

The claim of the defendants on this point proceeds upon a misconception. Here is no contract in the alternative. Testimony it seems was admitted, without objection, that the steel furnished to the defendants should be paid for in gold, or its equivalent in United States legal tender currency. As the steel was to be imported, and of course paid for by the plaintiffs in gold, it was natural and reasonable that they should provide for payment to themselves, in gold, or its equivalent. And this, not by way of making a contract in the alternative, but simply as a mode of fixing the price. If the plaintiffs had performed their contract, and that of course was a matter of fact for the jury, they were clearly entitled to recover, on the common counts, the price agreed to be paid for the commodity furnished.

We see no ground for a new trial.

In this opinion the other judges concurred; except PARK, J., who having tried the case below did not sit.